IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION

SHAVONDA LANCASTER
2110 Southview Dr.
Greenville, NC 27858

Plaintiff,

v.

WASTE INDUSTRIES, LLC
3301 Benson Dr.
Ste 601
Raleigh, NC 27834

**Serve also:**
WASTE INDUSTRIES, LLC
c/o CT Corporation System
160 Mine Lake Ct.
Ste. 200

Defendant.

**COMPLAINT FOR DAMAGES**

**JURY DEMAND ENDORSED HEREIN**

Plaintiff, Shavonda Lancaster, by and through undersigned counsel, as her Complaint against Waste Industries, LLC Defendant ("Waste Industries" or "Defendant"), states and avers the following:

## PARTIES

1. Lancaster is a resident of the city of Greenville, county of Pitt, state of North Carolina.
2. Waste Industries is a domestic limited liability company whose principal place of business is located at 415 Staton Rd., Greenville, NC 27834.
3. Waste Industries was at all times hereinafter mentioned an employer within the meaning of 2000e-2 *et seq*.; 42 U.S.C. 126 § 12101 *et seq*.; and 29 U.S.C § 2601, *et seq*.
4. Waste Industries was at all times hereinafter mentioned, a "person" within the meaning of 29 USC § 203(a) AND/OR an "employer" within the meaning of 29 USC § 2611(4)(A).

## JURISDICTION & VENUE

5. Waste Industries hires citizens of the state of North Carolina, contracts with companies in North Carolina, and owns or rents property in North Carolina. As such, the exercise of personal jurisdiction over Waste Industries comports with due process.

6. This cause of action arose from or relates to the contracts of Waste Industries with North Carolina residents, thereby conferring specific jurisdiction over Waste Industries.

7. This court has subject matter jurisdiction pursuant to 28 U.S.C. § 1331 and 1341 inasmuch the matters in controversy are brought pursuant to Family and Medical Leave Act ("FMLA"), 29 U.S.C § 2601, *et seq.*

8. This Court has supplemental jurisdiction under 28 U.S.C. § 1367 over Lancaster's state law claims because those claims derive from a common nucleus of operative facts.

9. Venue is proper in this District because the wrongs herein alleged occurred in this District.

## ADMINISTRATIVE REMEDIES

10. Within 180 days of the conduct alleged below, Lancaster filed a Charge of Discrimination with the Equal Employment Opportunity Commission ("EEOC"), Charge No. 433-2024-01920 against Waste Industries operating at 415 Staton Rd., Greenville, NC 27834.

11. On or about January 31, 2025 the EEOC issued and mailed a Notice of Right to Sue letter to Lancaster regarding the Charges of Discrimination brought by Lancaster against Waste Industries in EEOC Agency Charge No. 433-2024-01920.

12. Lancaster received her Right to Sue letter from the EEOC in accordance with 42 U.S.C. § 2000e-5(f)(1) - which has been attached hereto as Plaintiff's Exhibit A.

13. Lancaster has filed this Complaint within 90 days of the issuance of the Notice of Right to Sue letter.

14. Lancaster has properly exhausted her administrative remedies pursuant to 29 C.F.R. § 1614.407(b).

## TITLE VII COVERAGE

15. At all times referenced herein, Waste Industries was an "employer" within the meaning of 42 U.S.C. § 2000e(b), in that it was engaged in an industry affecting commerce and had fifteen or more employees for each working day in each of twenty or more calendar weeks in the current or preceding calendar year.
16. At all times referenced herein, Lancaster was an "employee" of First Citizens within the meaning of 42 U.S.C. § 2000e(f), in that she was an individual employed by an employer.

## FACTS

17. Lancaster is a former employee of Waste Industries.
18. Wast Industries hired Lancaster on or about October 22, 2022.
19. Waste Industries hired Lancaster in the position of Truck Driver.
20. Lancaster is female.
21. Lancaster has asthma. ("Lancaster's Disability")
22. Lancaster's Disability substantially inhibits Lancaster's major life activities.
23. In particular, Lancaster's Disability substantially inhibits Lancaster's ability to breathe, communicate, and work.
24. Lancaster informed Waste Industries of Lancaster's Disability.
25. Lancaster has an actual disability.
26. In the alternative, Waste Industries perceived Lancaster to be disabled.
27. In the alternative, Waste Industries was aware of Lancaster's record of disability.
28. Lancaster was one of only a handful of female employees at Waste industries.

29. While working for Waste Industries, Lancaster was trained by Lavell Pinkett.

30. Pinkett is male.

31. Upon information and belief Pinkett is not disabled.

32. Pinkett was a trainer for Truck Drivers.

33. Pinkett had the authority to hire, fire, or discipline employees.

34. Starting in or around the summer of 2023, Pinkett began to sexually harass Lancaster using his position as a trainer. ("Pinkett's Sexual Harassment").

35. Pinkett's Sexual Harassment included repeatedly taking photos of Lancaster.

36. Pinkett's Sexual Harassment included repeatedly taking videos of Lancaster.

37. Pinkett's Sexual Harassment included texting and calling Lancaster.

38. Pinkett's Sexual Harassment through text and call included calling Lancaster "pretty eyes" and telling Lancaster "I love you."

39. Pinkett's Sexual Harassment included rubbing Lancaster's hands.

40. Pinkett's Sexual Harassment included holding things away from Lancaster so that she would have to lean over him to grab them and he could feel her body.

41. Lancaster repeatedly asked Pinkett to stop Pinkett's Sexual Harassment.

42. Pinkett continued to sexually harass Lancaster after Lancaster asked Pinkett to stop Pinkett's Sexual Harassment.

43. Pinkett's Sexual Harassment was sexual harassment done knowingly.

44. Pinkett's Sexual Harassment was sexual harassment done willingly.

45. Pinkett's Sexual Harassment was sexual harassment done intentionally.

46. Pinkett's Sexual Harassment was unwelcome.

47. Pinkett's Sexual Harassment was offensive.

48. Pinkett's Sexual Harassment was pervasive.

49. Pinkett's Sexual Harassment was severe.

50. Lancaster reported Pinkett's Sexual Harassment to Travis Pope. ("Lancaster's Reports of Sexual Harassment")

51. Pope is male.

52. Pope is not disabled.

53. Pope was Lancaster's direct supervisor.

54. Pope had the authority to hire, fire, or discipline employees.

55. Lancaster's Reports of Sexual Harassment were made continuously to Pope, orally and via telephone call.

56. Lancaster's Reports of Sexual Harassment were made starting at the time Pinkett's Sexual Harassment began, through approximately two months before Waste Industries terminated Lancaster's employment.

57. Pope refused to take action regarding Pinkett's Sexual Harassment.

58. Pope did not conduct an investigation into Lancaster's Reports of Sexual Harassment.

59. By failing to investigate Lancaster's Reports of Sexual Harassment, Waste Industries ratified Pinkett's Sexual Harassment.

60. In or around September 2023, Lancaster's truck did not have a functioning air conditioner.

61. In or around September 2023, Lancaster noticed that her asthma symptoms were making it difficult to breathe while driving.

62. In September 2023, Lancaster provided a doctor's note to Waste Industries and requested accommodations. ("Lancaster's First Request for Accommodations")

63. Lancaster's First Request for Accommodations requested to be assigned a truck with air conditioning.

64. Lancaster's First Request for Accommodations requested in the alternative to have a small fan placed in her truck.

65. Waste Industries has many trucks with small fans in them.

66. Waste Industries regularly provided male employees with the trucks with small fans when they complained of heat.

67. Providing Lancaster with a truck with a small fan would not cause an undue burden on Waste Industries.

68. Waste Industries denied Lancaster's request for accommodations.

69. Waste Industries denied Lancaster's request for accommodations without examining or offering Lancaster alternatives.

70. Waste Industries failed to engage in an interactive process regarding Lancaster's First Request for Accommodations.

71. Shortly after Lancaster's First Request for Accommodations, in or around September 2023, Lancaster suffered from an asthma attack while driving her truck.

72. Lancaster's asthma attack could have been prevented with the grant of Lancaster's accommodations.

73. Lancaster was rushed to the emergency room as a result of her asthma attack.

74. Lancaster was placed on a ventilator as a result of her asthma attack.

75. Waste Industries was aware of Lancaster's asthma attack.

76. Waste Industries coordinated with Lancaster about her health and return to work via text.

77. Waste Industries was aware of Lancaster's asthma as a result of Lancaster's asthma attack.

78. Waste Industries viewed Lancaster as disabled as a result of Lancaster's asthma attack.

79. Waste Industries was aware of Lancaster's record of disability as a result of Lancaster's asthma attack.

80. Waste Industries failed to provide Lancaster with adequate accommodations after Lancaster's asthma attack.

81. Waste Industries failed to engage in an interactive process regarding Lancaster's request for accommodations after Lancaster's asthma attack.

82. In November 2023, Lancaster requested leave under the FMLA.

83. Lancaster requested leave to care for her daughter's medical issue.

84. Lancaster is the primary caretaker for her daughter.

85. After requesting leave under the FMLA, the discriminatory treatment against Lancaster worsened.

86. As a result of the worsening discrimination against her, Lancaster reported discrimination on the basis of her gender, race, and disability to Emmett Last Name Unknown ("LNU"). ("Lancaster's First Report of Discrimination").

87. Emmett LNU is male.

88. Emmet LNU is not disabled.

89. Emmet LNU is Waste Industries' Human Resources Manager.

90. Emmet LNU had the authority to hire, fire, or discipline employees.

91. Lancaster made Lancaster's First Report of Discrimination in or around December of 2023.

92. In response to Lancaster's First Report of Discrimination, Defendants did not interview Lancaster.

93. In response to Lancaster's First Report of Discrimination, Defendants did not get a written statement from Lancaster.

94. In response to Lancaster's First Report of Discrimination, Defendants did not get a written statement from anyone.

95. Defendants did not investigate Lancaster's First Report of Discrimination at the time it was made.

96. By failing to take any action in response to Lancaster's First Report of Discrimination, Defendants endorsed and condoned the discriminatory conduct.

97. Shortly after Lancaster's First Report of Discrimination in December 2023, Waste Industries suspended Lancaster.

98. Lancaster had been riding along with Otis LNU to assist with Otis LNU's routes.

99. Otis LNU is a truck driver for Waste Industries.

100. Otis LNU is male.

101. Otis LNU is not disabled.

102. Otis LNU was also riding with Lancaster to assist with Lancaster's routes.

103. Waste Industries suspended Lancaster stating that it was a violation of Waste Industries' policies for the two to ride together.

104. Waste Industries did not suspend Otis LNU.

105. Waste Industries did not suspend other male employees for riding with each other.

106. Waste Industries suspended Lancaster on the basis of her gender.

107. Waste Industries suspended Lancaster on the basis of her disability.

108. Waste Industries suspended Lancaster in retaliation for Lancaster's Report of Sexual Harassment.

109. Waste Industries suspended Lancaster in retaliation for Lancaster's First Request for Accommodations.

110. Waste Industries suspended Lancaster in retaliation for Lancaster's First Report of Discrimination.

111. After Waste Industries suspended Lancaster, Lancaster again complained of discrimination on the basis of gender, race, and disability. ("Lancaster's Second Report of Discrimination").

112. Lancaster's Second Report of Discrimination was made to Emmett LNU and to Waste Industries' corporate office.

113. In response to Lancaster's Second Report of Discrimination, Defendants did not interview Lancaster.

114. In response to Lancaster's Second Report of Discrimination, Defendants did not get a written statement from Lancaster.

115. In response to Lancaster's Second Report of Discrimination, Defendants did not get a written statement from anyone.

116. Defendants did not investigate Lancaster's Second Report of Discrimination at the time it was made.

117. By failing to take any action in response to Lancaster's Second Report of Discrimination, Defendants endorsed and condoned the discriminatory conduct.

118. On or about January 23, 2023, Lancaster's truck broke down in a yard.

119. Waste Industries' trucks break down from time to time.

120. Male employees frequently suffer from breakdowns similar to the breakdown Lancaster's truck suffered from on or about January 23, 2023.

121. Male employees suffer from similar breakdowns as often as two to three times a year.

122. Male employees suffering from similar breakdowns are not disciplined for the breakdown.

123. Male employees suffering from similar breakdowns are not terminated for the breakdown.

124. Waste Industries suspended Lancaster on or about January 23, 2023, following the breakdown.

125. Waste Industries then terminated Lancaster on or about January 24, 2023.

126. Waste Industries' stated reason for terminating Lancaster's employment was due to the breakdown, accusing Lancaster of destruction of property.

127. Waste Industries' purported reason for Lancaster's termination is pretext for discrimination.

128. Waste Industries' purported reason for Lancaster's termination is pretext for discrimination based on Lancaster's gender.

129. Waste Industries' purported reason for Lancaster's termination is pretext for discrimination based on Lancaster's disability.

130. Waste Industries' purported reason for Lancaster's termination is pretext for retaliation.

131. Waste Industries' purported reason for Lancaster's termination is pretext for retaliation for Lancaster's Reports of Sexual Harassment.

132. Waste Industries' purported reason for Lancaster's termination is pretext for retaliation for Lancaster's First Request for Accommodation.

133. Waste Industries' purported reason for Lancaster's termination is pretext for retaliation for Lancaster's First Report of Discrimination.

134. Waste Industries' purported reason for Lancaster's termination is pretext for retaliation for Lancaster's Second Report of Discrimination.

135. Defendant did not proffer a legitimate non-discriminatory reason for terminating Lancaster.

136. Upon information and belief, Lancaster's termination of employment, Defendants hired or retained an individual outside of Lancaster's protected class to replace Lancaster.

137. As a result of Defendant's conduct, Lancaster suffered, and will continue to suffer damages.

## COUNT I: GENDER DISCRIMINATION

138. Lancaster restates each and every prior paragraph of this Complaint, as if it were fully restated herein.

139. Defendant treated Lancaster differently than other similarly situated employees based on her gender.

140. Defendant treated Lancaster differently than Otis LNU.

141. Defendants discriminated against Lancaster on the basis of her gender throughout her employment with the company.

142. Defendants terminated Lancaster's employment without just cause.

143. Defendants terminated Lancaster's employment based on her gender.

144. Lancaster suffered emotional distress as a result of Defendants' conduct, and is entitled emotional distress damages.

145. As a direct and proximate result of Defendants' conduct, Lancaster suffered and will continue to suffer damages, including economic and emotional distress damages.

## COUNT II: SEXUAL HARASSMENT

146. Lancaster restates each and every paragraph of this Complaint as though it were fully restated herein.

147. Lancaster was subjected to unwelcomed sexual harassment in the form of sexual comments, inappropriate sexual gestures, and sexual advances.

148. Defendant created and sustained an environment of severe and pervasive sexual harassment in the form of unwelcomed sexual comments, inappropriate sexual gestures, and sexual advances.

149. As a direct and proximate result of the intimidating, offensive and hostile environment created and sustained by Defendants, Lancaster repeatedly reported the sexual harassment to her supervisor verbally.

150. Defendant's actions amount to discrimination on the basis of sex through the creation of a hostile work environment in violation of Title VII.

151. Waste Industries's sexual harassment of Lancaster occurred while she was acting in the course and scope of her employment as a truck driver.

152. Lancaster's supervisor had knowledge of Waste Industries's sexual harassment and failed to take any corrective or remedial action.

153. Lancaster suffered emotional distress as a result of Waste Industries's conduct, and is entitled emotional distress damages.

154. As a direct and proximate result of Waste Industries's conduct, Lancaster has suffered and will continue to suffer damages, including economic and emotional distress damages.

**COUNT III: <u>DISABILITY DISCRIMINATION IN VIOLATION OF THE AMERICANS WITH DISABILITIES ACT</u>**

155. Lancaster restates each and every prior paragraph of this Complaint, as if it were fully restated herein.

156. Lancaster suffers from asthma.

157. Lancaster is disabled.

158. In the alternative, Waste Industries perceived Lancaster as being disabled.

159. Lancaster's condition constituted a physical impairment.

160. Lancaster's condition substantially impaired one or more of her major life activities including working.

161. Waste Industries  perceived Lancaster's condition to substantially impair one or more of her major life activities including working and breathing.

162. Waste Industries treated Lancaster differently than other similarly-situated employees based on her disabling condition.

163. Waste Industries treated Lancaster differently than other similarly-situated employees based on her perceived disabling condition.

164. On or about January 24, 2023, Defendant terminated Lancaster's employment without just cause.

165. Defendant terminated Lancaster's employment based her disability.

166. Defendant terminated Lancaster's employment based her perceived disability.

167. Defendant terminated Lancaster's employment based on her record of disability.

168. Defendant violated the Americans with Disabilities Act when it discharged Lancaster based on her disability.

169. Defendant violated the ADA when it discharged Lancaster based on her perceived disability.

170. Waste Industries violated the ADA by discriminating against Lancaster based on her disabling condition.

171. Waste Industries violated the ADA by discriminating against Lancaster based on her perceived disabling condition.

172. Waste Industries violated The American with Disabilities Act (ADA) section 42 U.S.C. 126 § 12112.

173. Lancaster suffered emotional distress as a result of Defendants' conduct, and is entitled emotional distress damages.

174. As a direct and proximate result of Defendant's conduct, Lancaster suffered and will continue to suffer damages, including economic and emotional distress damages.

**COUNT IV: <u>DISABILITY DISCRIMINATION - FAILURE TO ACCOMODATE IN VIOLATION OF THE AMERICANS WITH DISABILITY ACT</u>**

175. Lancaster informed Waste Industries of her disabling condition.

176. Lancaster requested accommodations from Waste Industries to assist with her disabilities including moving to a different location.

177. Lancaster's requested accommodations were reasonable.

178. There was an accommodation available that would have been effective and would have not posed an undue hardship to Waste Industries.

179. Waste Industries failed to engage in the interactive process of determining whether Lancaster needed an accommodation.

180. Waste Industries failed to provide an accommodation.

181. Waste Industries violated The Americans with Disabilities Act (ADA) 42 U.S.C. 126 § 12101 et seq.

182. As a direct and proximate result of Waste Industries' conduct, Lancaster suffered and will continue to suffer damages, including economic and emotional distress damages.

**COUNT V: <u>RETALIATION IN VIOLATION OF THE ADA</u>**

183. Lancaster restates each and every paragraph of this Complaint as if it were fully restated herein.

184. Pursuant to 42 U.S.C. § 12203, "No person shall discriminate against any individual because such individual opposed any act or practice made unlawful by this chapter or because such individual made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this chapter."

185. Lancaster attempted to participate in the interactive process afforded to her by the ADA.

186. Lancaster's First Request for Accommodation constituted a request for reasonable accommodation.

187. A request for reasonable accommodation is a protected activity under the ADA.

188. Subsequent to Lancaster's requests for accommodation, Waste Industries terminated her employment.

189. Waste Industries' actions were retaliatory in nature based on Lancaster's leave requests.

190. As a result of Waste Industries' discrimination in violation of the ADA, Lancaster has been denied employment opportunities providing substantial compensation and benefits, thereby entitling Lancaster to injunctive and equitable monetary relief.

191. Lancaster has suffered severe mental anguish and emotional distress, including, but not limited to, depression, humiliation, embarrassment, stress and anxiety, loss of self-esteem and self-confidence, and emotional pain and suffering.

192. In their discriminatory action as alleged above, Waste Industries acted with malice and reckless indifference to the rights of Lancaster, thereby entitling Lancaster to an award of punitive damages.

193. To remedy the violations of the rights of Lancaster secured by the ADA, Lancaster requests that the Court award her the relief demanded below.

## COUNT VI: <u>RETALIATION IN VIOLATION OF TITLE VII</u>

194. Lancaster restates each and every paragraph of this complaint, as if it were fully restated herein.

195. Pursuant to 42 U.S.C. § 2000e-3(a), it is an unlawful employment practice for an employer to discriminate against an employee "because he has opposed any practice made an unlawful employment practice by this subchapter, or because he has made a charge, testified, assisted,

or participated in any manner in an investigation, proceeding, or hearing under this subchapter."

196. In December 2023, Lancaster opposed gender and race discrimination twice.

197. After Lancaster complained about race discrimination, Defendant failed to take prompt remedial action following her complaints of race discrimination.

198. Defendant ratified the race discrimination that Lancaster suffered.

199. On or about January 24, 2023, Defendant terminated Lancaster's employment.

200. Defendant terminated Lancaster in retaliation for opposing discrimination.

201. In their discriminatory action as alleged above, Waste Industries acted with malice and reckless indifference to the rights of Lancaster, thereby entitling Lancaster to an award of punitive damages.

202. As a direct and proximate result of RBA's conduct, Lancaster suffered and will continue to suffer damages, including economic and emotional distress damages.

**COUNT VII: <u>RETALIATION IN VIOLATION OF THE FMLA</u>**

203. Lancaster restates each and every prior paragraph of this Complaint, as if it were fully restated herein.

204. During her employment, Lancaster requested FMLA leave.

205. At the time of her FMLA request, Lancaster had worked over 1250 hours out of the past year.

206. At the time of her FMLA request, Defendant regularly employed over 50 people within a 75 mile radius of the location that Lancaster worked for the proceeding twelve months.

207. At the time of her FMLA request, Lancaster had worked for Defendant for over a year.

208. After Lancaster requested her qualified FMLA leave, Defendant retaliated against her.

209. Defendant retaliated against Lancaster by terminating her employment.

210. Defendants willfully retaliated against Lancaster in violation of U.S.C. § 2615(a).

211. As a direct and proximate result of Defendants' wrongful conduct, Lancaster is entitled to all damages provided for in 29 U.S.C. § 2617, including liquidated damages, costs, and reasonable attorney's fees.

## DEMAND FOR RELIEF

WHEREFORE, Shavonda Lancaster demands from Defendants the following:

(a) Issue an order requiring Waste Industries to restore Lancaster to one of the positions to which she was entitled by virtue of her application and qualifications, and expunge her personnel file of all negative documentation;

(b) An award against each Defendant of compensatory and monetary damages to compensate Lancaster for physical injury, physical sickness, lost wages, emotional distress, and other consequential damages, in an amount in excess of $ 25,000 per claim to be proven at trial;

(c) An award of punitive damages against each Defendant in an amount in excess of $ 25,000;

(d) An award of reasonable attorneys' fees and non-taxable costs for Lancaster's claims as allowable under law;

(e) An award of the taxable costs of this action; and

(f) An award of such other relief as this Court may deem necessary and proper.

Respectfully submitted,

/s/ *Evan G. Gungor, Esq.*

Evan Gungor (60902)
**SPITZ, THE EMPLOYEE'S LAW FIRM**
5540 Centerview Drive
Suite 200B
Raleigh, NC 27606
Phone: (980) 332-4688
Fax: (216) 291-5744
Email: evan.gungor@spitzlawfirm.com

*Attorneys For Plaintiff*
*Shavonda Lancaster*

## **JURY DEMAND**

Plaintiff Shavonda Lancaster demands a trial by jury by the maximum number of jurors permitted.

/s/ *Evan Gungor*
Evan G. Gungor, Esq. (60902)